UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

JOHN M. LINTON AND CLEARVIEW    )
PARTNERS, LLC    )
    )
    Plaintiffs,    )
    )    Civil Action No. 5:08-cv-00548-XR
VS.    )
    )
RICHARD WHITMAN,    )
    )
    Defendant.    )
    )

**ORDER**

On this date, the Court considered Defendant's Rule 12(b)(2) Motion to Dismiss for Lack

of Personal Jurisdiction, Plaintiff's Response, and Defendant's Reply. After careful consideration,

the Court denies the motion.

**I. Factual Background[1]**

In 2007, John Linton, managing director of Clearview, learned that Fox Interactive Media

(FOX), the parent company of Alena LLC (Alena), was attempting to sell Alena. Decl. of John M.

Linton at 1.  At this time, Linton, at his home office in San Antonio, Texas, contacted Whitman,

general manager of Alena, in California, about purchasing Alena. *Id*.  In response to Linton's

inquiries, Linton claims that Whitman stated that he would provide confidential financial

---

[1] When ruling on a motion to dismiss for lack of personal jurisdiction without first holding
an evidentiary hearing, a court takes as true the uncontroverted allegations in the complaint and
resolves factual conflicts in the affidavits in favor of the plaintiff. *Bullion v. Gillespie*, 895 F.2d 213,
217 (5th Cir. 1990).

information about Alena only if Clearview agreed to execute a letter agreement with Whitman. *Id*. at 1-2.  At this time, Linton advised Whitman that any letter agreement would have to be between Whitman and Clearview, and that Clearview's sole place of business was located in San Antonio, Texas. *Id*.

On February 13, 2007, Defendant Whitman sent a draft letter agreement to Linton via e-mail. *Id*.  Linton then reviewed the agreement at his residence in San Antonio.  According to Linton, this draft agreement was prepared by Whitman and addressed to Clearview, and Whitman was aware that Clearview's sole place of business was in Texas.  *Id*.  Linton then exchanged several emails and phone conversations with Whitman while negotiating revisions to the agreement. *Id*. at 2-3.  The vast majority of Linton's communications with Whitman were done from San Antonio. *Id*. at 4. On February 21, 2007, Linton executed a copy of the agreement and sent it to Whitman.  *Id*. at 3.

Following the execution of the Letter Agreement, Linton was actively involved with Whitman in contacting investors who might be interested in the acquisition of Alena. *Id*. at 4. During this time, Linton spoke with Whitman over the phone in excess of 100 times. *Id*.  Linton also claims that he exchanged e-mails with Whitman almost every day dealing with various issues related to Alena. *Id*. In April and May of 2007, Whitman provided Plaintiffs various revenue projections for Alena. *Id*. at 5.  Upon distribution of these projections, Linton claims that Whitman represented that such projections were accurate and reasonably based on financial statements and historical revenue information of Alena.  *Id*.  These projections were provided by Whitman via email, and they were received at Clearview's sole place of business, in San Antonio. *Id*. These revenue projections form the basis of Plaintiff's fraud and negligent misrepresentation claims in Plaintiffs' Original Petition. *Id*.

2

Defendant, Whitman, maintains the following facts: 1) he does not do business in Texas; 2) he has not sold, manufactured, or distributed any products in Texas; 3) he does not nor has he ever maintained a place of business in Texas and does not nor has he ever had any employees, agents or servants in Texas; 4) he does not recruit residents, directly or through an intermediary located in Texas, for employment inside or outside of Texas; 5) he has not entered into any contract to be performed in Texas; 6) he has not filed or sought to file articles of incorporation or other organizational documents in Texas; 7) he has not engaged in business activities in Texas; and 8) he has no contacts with Texas. Affidavit of Richard Whitman at 2-3.

On April 10, 2008, Plaintiffs sued Whitman in the 285th Judicial District Court, Bexar County, Texas for common-law fraud, statutory fraud, and negligent misrepresentation in connection with FOX's sale of subsidiary Alena.  Defendant removed the suit to this Court.

## II. Personal Jurisdiction

A "federal court sitting in diversity may assert jurisdiction if (1) the state's long-arm statute applies, as interpreted by the state's courts; and (2) if due process is satisfied under the fourteenth amendment to the United States Constitution." *Johnson v. Multidata Systems Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008) (quoting *Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 616 (5th Cir. 1989)).  Texas's long-arm statute extends to the limits of federal due process; therefore, the two-step inquiry folds into one due process analysis.  Due Process requires that the plaintiff prove: 1) the non-resident purposely availed himself of the benefits and protections of the forum state by establishing "minimum contacts" with the state; and 2) the exercise of the jurisdiction does not offend traditional notions of fair play and substantial justice. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994).

The due process clause of the Fourteenth Amendment protects an individual's liberty interest

in not being subject to the binding judgments of a forum within which he has no meaningful "'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)).  Minimum contacts with a state may arise incident to a federal court's general or specific jurisdiction over a nonresident defendant. *Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).  In a "no hearing situation, a plaintiff satisfies his burden by presenting a *prima facie* case for personal jurisdiction." *Id*.

Plaintiffs do not presently contend that this Court has general jurisdiction over Whitman. However, they do contend that Texas courts have specific jurisdiction over Whitman.

### III. Analysis

**A. Minimum Contacts**

*1. Defendant's claim that he did not purposefully avail himself of the privilege of conducting business in Texas.*

Defendant Whitman contends that federal courts in Texas do not have personal jurisdiction over him because he did not purposefully avail himself of the privileges and benefits of Texas. Defendant also states that the reason for the purposeful availment requirement is to "ensure that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).  Whitman claims that he could not have foreseen being haled into court in Texas.

"When an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions." *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988).  In this case, Whitman

allegedly committed intentional torts aimed at a Texas resident. The Fifth Circuit has made it clear that "when a nonresident defendant commits . . . an act outside the state that causes tortious injury within the state, that tortious conduct amounts to sufficient minimum contacts with the state by the defendant to constitutionally permit courts within that state, including federal courts, to exercise personal adjudicative jurisdiction over the tortfeasor and the causes of action arising from its offenses or quasi-offenses." *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 628 (5th Cir. 1999). "Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct." *Id.* The Fifth Circuit has further held that "[w]hen the actual content of communications with a forum gives rise to intentional tort causes of action, this alone constitutes purposeful availment. The defendant is purposefully availing himself of 'the privileges of causing a consequence' in Texas." *Wein Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999).

Plaintiffs have established a prima facie case that Whitman purposefully availed himself of the privileges of causing a consequence in Texas. Plaintiffs' claims are based on the actual content of communications that Whitman purposefully directed toward a Texas resident. Plaintiffs assert that, had Whitman not made such representations, they would not have invested in Alena. An individual injured in Texas need not go to California to seek redress from a person who, though remaining in California, knowingly caused the injury in Texas. Plaintiffs have established a prima facie case that Whitman knew that Linton, a Texas resident, would rely on the information he provided via email and phone conversations and that he purposefully directed this information to them in Texas, and thus it should have been foreseeable to Whitman that he would be haled into

court in Texas.

2.    *Defendant's claim that insignificant or attenuated acts do not constitute purposeful direction, and that Plaintiff's allegations of tort claims without more do not confer jurisdiction on this Court.*

Whitman notes that merely entering into a contract with someone who happens to reside in the forum state, for example, does not meet the minimum contacts standard.  While this may be true, Whitman overlooks the fact that the minimum contacts standard applied to intentional torts is the governing standard, and not the contracts minimum contacts standard applied in breach of contract cases. *See Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001)("There have been other cases where mere communications or negotiations with a resident of the forum state were not enough to subject non-resident defendants to the forum state's jurisdiction.  These cases did not, however, involve an intentional tort.").  In this case, Whitman allegedly directly aimed his intentional torts at Linton and Clearview, who he knew resided in Texas.

Whitman argues that this court should not exercise jurisdiction simply because Plaintiffs' pleadings set forth intentional tort claims, citing *Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).  In *Panda*, the Fifth Circuit acknowledged that "the mere allegation that an out-of-state defendant has tortiously interfered with contractual rights or has committed other business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts."  *Id.* (citing *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1079 (10th Cir. 1995)).  The Court found insufficient contacts when the plaintiffs' sole evidence was their state court petition, which alleged "on information and belief" that the defendant knew the plaintiffs were Texas residents and knew its actions would intentionally cause them harm in Texas.  Thus, in *Panda*, the sole evidence supporting

the allegations of intentional tortious acts was these conclusory allegations, and, even if credited, the allegations showed only foreseeable effects in Texas, and did not show some act by the defendant purposefully directed at Texas.  In this case, in contrast, Plaintiffs do not rely on mere allegations and have shown more than a foreseeable injury in Texas.  Rather, Plaintiffs have submitted a sworn declaration that supports the allegations of intentionally tortious activity and have alleged that the actual content of Defendant's purposeful communications with the forum gives rise to their intentional tort causes of action.  Thus, this case is more akin to *Wein Air*, in which the Court found minimum contacts, than to *Panda*.

Whitman claims that his contact with Texas was merely fortuitous.  This reasoning was rejected by the Fifth Circuit in the intentional tort context when it held that "[i]f this argument were valid in the tort context, the defendant could mail a bomb to a person in Texas but claim Texas had no jurisdiction because it was fortuitous that the victim's zip code was in Texas.  It may have been fortuitous, but the tortious nature of the directed activity constitutes purposeful availment." *Wein*, 195 F.3d 208, 213.

Finally, the Defendant urges that California has a significant interest in the litigation pursuant to the California choice-of-law provision. "The Supreme Court has indicated that a choice-of-law provision should neither be ignored nor considered sufficient alone to confer jurisdiction." *Electrosource, Inc. v. Horizon Battery Technologies, Limited*, 176 F.3d 867, 873 (5th Cir. 1999)(citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 482 (1985)).  Therefore, the choice-of-law clause is but one factor to consider when determining whether the forum state has jurisdiction over a non-resident defendant. *Id*.  Moreover, the presence of a California choice-of-law provision in the parties' agreement would have greater force if Plaintiffs were seeking to establish minimum

contacts through the contract alone.  However, in this case, minimum contacts are established through the alleged intentional torts aimed at Texas.  Thus, the presence of the California choice-of-law provision governing the contract does not undermine this court's conclusion that Defendant had minimum contacts by allegedly committing intentional torts aimed at Texas residents.

Consequently, Plaintiffs have presented a *prima facie* case for specific jurisdiction.  The only question remaining is whether this Court's exercise of personal jurisdiction over Whitman would violate traditional notions of fair play and substantial justice.

**B. Traditional Notions of Fair Play and Substantial Justice**

"Once a plaintiff has established minimum contacts, the burden shifts to defendant to show the assertion of jurisdiction would be unfair.  To show that an exercise of jurisdiction is unreasonable once minimum contacts are established, the defendant must make a 'compelling case' against it." *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).  "The defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Guidry v. United States Tobacco Co., Inc.*, 188 F.3d 619, 630 (5th Cir. 1999)(citing *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.*, 85 F.3d 201, 207 (5th Cir. 1996)).  "It is rare to say the assertion is unfair after minimum contacts have been shown." *Id*.

When determining the fundamental fairness issue, courts will normally examine: "(1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies." *Id*.

Texas has a significant interest in providing a forum for an action when the injured party is a Texas resident.  *Lewis v. Fresne*, 252 F.3d 352, 359 (5th Cir. 2001)(stating that where a non-

resident law firm's actions injured a Texas plaintiff, maintenance of the action would not offend traditional notions of fair play and substantial justice). "If a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Wein*, 195 F.3d at 215.  In *Wein*, the Fifth Circuit found jurisdiction to comport with the notions of fair play and substantial justice notwithstanding the fact that the defendant was a German citizen. *Id*.

Admittedly, litigation in Texas would place a burden on Whitman.  However, "once minimum contacts are established, the interests of the forum and the plaintiff justify even large burdens on the defendant." *Id*.  Resolving the conflicts in a light most favorable to the Plaintiffs, there is no overwhelming burden to Whitman that outweighs the legitimate interests of the Plaintiffs and the forum state.  Defendant Whitman has not satisfied the burden of showing that the maintenance of this suit in Texas would violate traditional notions of fair play and substantial justice.

## IV. CONCLUSION

Defendant's 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction (docket no. 3) is **DENIED**.

It is so ORDERED.

SIGNED this 8th day of October, 2008.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

9