# In the United States District Court
# for the
# Western District of Texas

| | |
|---|---|
| JOHN M. LINTON AND § <br> CLEARVIEW PARTNERS, LLC, § <br> Plaintiffs § <br> § <br> v. § <br> § <br> RICHARD WHITMAN, § <br> Defendant § | Civil Action No. 5:08-CV-00548-XR |

**ORDER**

On this date, the Court considered Defendant's Motion for Summary Judgment on the Affirmative Defense of Res Judicata (docket no. 20), Plaintiffs' Response (docket no. 22), and Defendant's Reply (docket no. 24). After careful consideration, the Court will grant the motion.

## I. Background

In early 2007, John M. Linton was the Managing Director of Clearview Partners, LLC ("Clearview"), a company organized under the laws of Nevada, with its principal place of business in San Antonio, Texas.[1] At that time, Richard Whitman was acting as General Manager for Alena, LLC ("Alena"), for which the controlling shareholder was Fox Interactive Media, Inc. ("Fox").[2] Linton and Clearview allege that they became aware that Fox was considering selling Alena, and that Clearview was interested in shopping this investment opportunity to potential investors, with the hope that it could acquire equity in the eventual purchaser in return for finding the investment.

On February 21, 2007, Whitman and Clearview entered into a two-page

---

[1] *See* Docket # 1, Ex. A, Plaintiff's Original Petition.

[2] *Id.*

letter agreement. This agreement stated that Whitman would provide Clearview with "certain information as our potential source of equity for a management buyout of Alena," and provided that if Clearview or one of its directly controlled affiliates purchased Alena "independently" of Whitman within two years of the date of the written agreement, then Whitman would be entitled to receive "3.0% of the total transaction value, to be paid in cash at closing."

On June 4, 2007, Fox sold Alena to Alena Internet Corporation.[3]

On September 6, 2007, Whitman sued Linton and Clearview in federal district court for the Central District of California, alleging breach of contract based on the fact that he was not paid the three percent transaction fee after AIC purchased Alena, as prescribed by their February 21 letter agreement.[4] Whitman alleged that Linton "individually and acting as the alter ego of Clearview Partners, and Clearview Partners, LLC or one of its directly controlled affiliates did purchase Alena, LLC." On November 9, 2007, Whitman filed a First Amended Complaint, which included more detailed allegations of Linton's alleged liability as the alter ego of Clearview. That same day, Clearview filed its Original Answer denying Whitman's claims, and Linton filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Linton filed an amended motion to dismiss Whitman's First Amended Complaint on November 30, 2007, for failure to state a claim upon which relief could be granted.

On December 3, 2007, the California district court conducted a preliminary

---

[3] The arbitrator found that "Linton caused an acquisition entity known as AIC to be formed in March 2007 as a Delaware corporation and it was registered to do business in California." Arbitrator's Report at 28.

[4] The Court has taken judicial notice of the filings in *Whitman v. Linton & Clearview Partners, LLC*, Civil A. No.:2:07-CV-05829-SVW-RC (C.D. California).

2

status conference and set the trial for April 29, 2008. The district court denied Linton's motion to dismiss on January 7, 2008. On January 18, 2008, Linton answered Whitman's amended complaint, and the parties commenced discovery.

Linton and Clearview assert that, during the course of discovery, on February 19, 2008, they learned new facts from Whitman's deposition tending to support fraud and misrepresentation counterclaims against Whitman. On March 19, 2008, Linton and Clearview sought leave to amend their answers to assert affirmative defenses and counterclaims under Federal Rule of Civil Procedure 15. The motion stated that it was made following the conference of counsel pursuant to Central District of California Local Rule 7-3, imposing a hold on filing any motions until twenty days had elapsed after the attorneys met and conferred about such motions. Linton and Clearview sought to include counterclaims for fraud and misrepresentation in inducing Clearview to execute the letter agreement, and for false revenue projections. Linton and Clearview asserted that they did not file the counterclaims earlier because they did not have sufficient information to comply with Rule 11 when they filed their original answers. Their counsel informed Whitman's counsel at the deposition that they intended to assert the fraud counterclaim.

On March 24, 2008, Whitman filed his opposition to the motion for leave to amend. Whitman acknowledged that Plaintiff's counsel mentioned the potential fraud counterclaim at the February 20, 2008 deposition, but faulted Plaintiffs for waiting "nearly a month" to file the motion for leave to amend despite the upcoming trial setting. Whitman argued that he would be prejudiced if leave to amend were granted.

On March 31, 2008, twenty-nine days before trial, the district court denied Linton's and Clearview's motion for leave to amend their answers to assert

3

counterclaims, without stating the grounds.[5] There was no discussion of the counterclaims by either party or the district court.[6] Linton and Clearview did not seek clarification from that court or appeal the ruling.

On April 10, 2008, Linton and Clearview filed the present lawsuit against Whitman in the 285th Judicial District Court of Bexar County, Texas, asserting fraud and misrepresentation claims, "but waited to serve Whitman anticipating an opportunity to urge the [California] District Court to reconsider its prior ruling before trial."[7]

At the pretrial conference in California district court on April 14, the district court ordered counsel to discuss the potential for arbitration with their clients. The parties agreed to binding arbitration, and on April 18, 2008, the court ordered the parties to binding arbitration and stayed the case pending the results of that arbitration. In the arbitration, Linton and Clearview tried asserting their proposed fraud and misrepresentation counterclaims. However, on May 6, 2008, the arbitrator ruled that he only had jurisdiction over the pleadings currently on file in the district court, namely Whitman's breach-of-contract claims, and thus did not consider Linton's and Clearview's counterclaims.[8] Linton and Clearview did not appeal this decision.

In June 2008, after the arbitrator denied Linton and Clearview leave to assert their claims, they served Whitman in this suit. On July 9, 2008, Defendant Whitman removed the case to this court based on diversity of citizenship. After removal, Defendant Whitman filed a Rule 12(b)(2) motion to

---

[5] Docket # 24 at ¶ 2; *See* Docket # 22, Ex. O, Mar. 31, 2008 Tr.

[6] *See id.*, Ex. O, Mar. 31, 2008 Tr.; Ex. P, Mot. for Leave to Amend Answers Hr'g Mins.

[7] Plaintiffs' Response at p. 5.

[8] *Id.*, Ex. A, Report of Arbitration Proceedings at ¶ 4.

4

dismiss for lack of personal jurisdiction on July 16, 2008.

The arbitration proceeded in Los Angeles, California and the arbitrator issued a report on August 25, 2008. Specifically, the arbitrator determined that the letter agreement was between Whitman and Clearview, not Linton. The arbitrator next considered whether AIC was a directly controlled affiliate of Clearview, and found that it was not. The arbitrator therefore concluded that the duty to pay the 3% transaction fee under the letter agreement was never triggered.

On October 8, 2008, this Court denied Whitman's motion to dismiss.

On October 20, 2008, Linton and Clearview filed a Motion for Order to Confirm Report of Arbitration Proceedings, Decision, and Arbitral Award and for Entry of Judgment in the California district court. The California district court entered a final judgment confirming the arbitral award in favor of Linton and Clearview on October 22, 2008.

Defendant Whitman now moves for final summary judgment as to all of Plaintiffs' claims based on the affirmative defense of res judicata.

## II. Standard of Review

**A. Summary Judgment**

Summary judgment should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). To obtain summary judgment on an affirmative defense, the defendant asserting such motion must establish each element of that defense as a matter of law. *Crescent Towing & Salvage Co. v. M/V Anax*, 40 F.3d 741, 744 (5th Cir. 1994).

**B. Res Judicata and Compulsory Counterclaims**

In essence, res judicata bars the subsequent litigation of claims that have been litigated or should have been raised in an earlier suit. *In re Ark-La-Tex Timber Co.*, 482 F.3d 319, 330 (5th Cir. 2007). Final judgments confirming arbitration awards are entitled to preclusive effect. *In re Flores*, Bankr. No. 07-52684-LMC, 2008 WL 2008617 (Bankr. W.D. Tex. May 6, 2008) (listing cases); RESTATEMENT (SECOND) OF JUDGMENTS § 84. Preclusion of a claim under res judicata principles requires four elements: (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions.

The application of the fourth factor – whether the second suit involves the same cause of action – depends in this case upon the scope of the compulsory counterclaim rule. *Dillard v. Security Pacific Brokers*, 835 F.2d 607, 609 (5th Cir. 1988). Therefore, "the next inquiry concerns what claims were required to have been asserted as a compulsory counterclaim in the original suit." *Id.* Rule 13(a) provides that a counterclaim is compulsory and must be asserted with the answer if it (1) "arises out of the transaction or occurrence that is the subject of the opposing party's claim" and (2) its adjudication does not require the presence of another party over whom the court cannot acquire jurisdiction.[9] FED. R. CIV. P. 13(a)(1); *see, e.g.*, *Nippon Credit Bank, Ltd. v. Matthews*, 291 F.3d 738, 755 (11th Cir. 2002). The requirement that counterclaims arising out of the same transaction or occurrence as the opposing party's claim 'shall' be stated in the pleadings was designed to prevent multiplicity of actions and to achieve

---

[9] It is undisputed that this second requirement is met.

resolution in a single lawsuit of all disputes arising out of common matters. *Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962). The Rule was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint. *Id.*

With regard to the first requirement under Rule 13(a), the Fifth Circuit has held that a counterclaim is compulsory if any one of the following four tests is met: "(1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and counterclaim." *Park Club Inc. v. Resolution Trust Corp.*, 967 F.2d 1053, 1058 (5th Cir.1992). "An affirmative answer to any of the four questions indicates the counterclaim is compulsory." *Id.*

The fourth test – logical relationship – is the preferred test. *Plant v. Blazer Financial Servs.*, 598 F.2d 1357, 1361 (5th Cir. 1979). Under this test, "any claim a party has against an opposing party that is logically related to the claim being asserted by the opposing party and that is not within the exceptions listed in Rule 13(a) is a compulsory counterclaim." 6 FED. PRAC. & PRO. § 1410 (cited with approval by *Papadopoulos v. Douglas*, 268 F.3d 1063 (5th Cir. 2001)). The hallmark of this approach is its flexibility. *Id.* Basically, it allows the court to apply Rule 13(a) to any counterclaim that from an economy or efficiency perspective could be profitably tried with the main claim. *Id.*

A counterclaim that is compulsory but is not brought in the first action is thereafter barred from being brought in a second action. *Papadopoulos v.*

*Douglas*, 268 F.3d 1063 (5th Cir. 2001) (citing *New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998)); *see also* 6 FED. PRAC. & PRO. § 1417 ("As a result, a successful defendant is precluded from subsequently suing on a claim that should have been interposed as a counterclaim in the first action; in other words the omitted counterclaim is merged in the judgment in that suit."); *Shmuel Shmueli, Bashe, Inc. v. Lowenfeld*, 68 F. Supp. 2d 161, 165 (E.D.N.Y. 1999) ("Having failed, for whatever reason, to assert their counterclaims in one action, plaintiffs may not institute a second action in which those counterclaims become the basis of the complaint."). It is not necessary that the judgment in the prior action have been rendered before the second action is commenced. *Papadopoulos*, 268 F.3d 1063 (citing RESTATEMENT (SECOND) OF JUDGMENTS § 14 cmt. a (1982)). There are some exceptions to this rule, however, such as when a counterclaim is acquired by the Defendant after serving its answer. FED. R. CIV. P. 13(e).

### III. Analysis

Whitman, as the summary judgment movant, must prove that no genuine issue of material fact exists as to each element of res judicata, and that he is entitled to judgment as a matter of law. Defendant Whitman claims that each of the four res judicata elements is met, and asks this court to grant summary judgment and dismiss this matter as to all issues, all parties, and all theories of recovery.

As to the first element, Plaintiffs do not dispute that the parties in the prior California lawsuit and arbitration are identical to the parties in the current suit. Furthermore, Plaintiffs do not dispute that the judgment in the California lawsuit was rendered by a court of competent jurisdiction, as required by element two. Thus, the disputed issues are the third and fourth elements of

res judicata.

## A. The same claim or cause of action was involved in both actions

As to the fourth element, Whitman contends that the facts and circumstances underlying the previous California lawsuit and those underlying the instant action arise out of the same transaction and thus Plaintiffs' current claims were compulsory counterclaims that should have been brought in the California litigation. Whitman proffers evidence that Plaintiffs themselves recognize that their current claims are "substantially related" and "arise out of the Agreement" at issue in the previous California lawsuit, citing to Linton's and Clearview's briefings seeking leave from the California Court to amend their pleadings:

> However, the issues contained in Defendants' proposed claims of fraud are substantially related to the issues contained in Plaintiff's Complaint. Defendants' affirmative claims arise out of the Agreement upon which Plaintiff is suing, and much of the discovery on Defendants' affirmative claims overlap with Plaintiff's claims. In fact, discovery on Defendants' fraud claims has already been conducted.[10]

The Court must therefore determine whether the current claims were compulsory counterclaims to the breach-of-contract claim asserted by Whitman in the California litigation.

In the California suit, Whitman sued Linton and Clearview for breach of the letter agreement. He alleged that (1) he entered into a letter agreement with Linton and Clearview on February 21, 2007; (2) at the time, he was the acting general manager for Alena, and Fox was the parent company and controlling shareholder, and was considering divesting Alena and selling it to a third party;

---

[10] Ex. B6, Defendants John M. Linton and Clearview Partners, LLC's Reply to Plaintiff's Opposition to Defendants' Motion for Leave to Amend Their Answers at p. 5..

(3) Linton was involved in an attempt to acquire Alena from Fox in early 2007; (4) in the letter agreement, Linton and Clearview agreed that if Clearview or one of its directly controlled affiliates were to purchase Alena, and if such purchase were to occur within two years of the agreement, "independently" of Whitman, Clearview and Linton would pay Whitman a 3% transaction fee at the closing; (5) in 2007, Linton, individually and acting as the alter ego of Clearview and Clearview or one of its directly controlled affiliates, purchased Alena, and this purchase was independent of Whitman; (6) closing occurred June 3, 2007; (7) Clearview and Linton failed to pay Whitman 3% at the closing as promised in the letter agreement, in breach of the agreement; and (8) Linton acted as alter ego of Clearwater. Linton and Clearview answered, denying most of the allegations in the complaint, and asserted no affirmative defenses.

In their motion for leave to amend filed in the California court, Linton and Clearview argued that the "recently discovered fraud goes to the very basis of Plaintiff's contract claim against Defendants." They alleged that, before Whitman's deposition, they knew that Whitman had represented that he was the only person with access to confidential financial information about Alena, that the only way they could access the information was by executing the letter agreement, and that he had the "endorsement" of Fox to proceed as the buyer and this endorsement would make it nearly impossible for anyone to purchase Alena without his involvement. However, Linton and Clearview alleged that they learned at Whitman's deposition that all of the information he provided was owned by Fox and that his consulting agreement with Fox required that he obtain written permission before sharing the information, which he did not have. Linton and Clearview asserted that they learned that Fox and/or Alena were the lawful owners of the information and would have provided it to Linton and

10

Clearview without Whitman's involvement and without Clearview first having to execute the letter agreement with Whitman. Linton and Clearview assert that they "sought [leave] to include counterclaims for fraud or negligent misrepresentation in inducing Clearview to execute the Agreement allegedly breached by Clearview ... and fraud or misrepresentation counterclaims for false revenue projections provided by Whitman to Clearview under the Agreement."[11]

In the current action, Plaintiffs allege that they became aware in 2007 that Fox was considering selling Alena. They further allege that Whitman was an independent contractor consultant for Fox, and that his work provided him access to confidential information. However, they allege, Whitman was required to first obtain written permission from Fox before divulging confidential information to an outside party. Plaintiffs were interested in "shopping around" the potential acquisition of Alena to potential investors, and made inquiries of Whitman. Plaintiffs allege that Whitman made certain representations that he was the only person with confidential financial information about Alena necessary to evaluate a possible buyout, the only way to obtain the information was through him, he had the endorsement of Fox to proceed as the buyer, and this endorsement would make it nearly impossible for anyone to purchase Alena without his involvement. Plaintiffs allege that Whitman told Plaintiffs that he would provide confidential financial information about Alena only if Plaintiffs agreed to execute a letter agreement. Plaintiffs entered into the agreement.

Plaintiffs allege that, at the time, it was "unbeknownst" to Linton that Whitman was required to obtain written permission from Fox before providing confidential information about Alena to third parties, but he did not have such permission. Plaintiffs allege that Defendant's representations were material to

---

[11] Plaintiffs' Response to MSJ at 4.

Clearview's decision to execute the letter agreement, and Clearview would not have executed the agreement without the representations. Plaintiffs allege that they subsequently learned that Whitman's representations were false, and that Fox and Alena owned the information and would have provided it to Plaintiffs without Whitman's involvement.

Plaintiffs further allege that Whitman provided Plaintiffs with various revenue projections for Alena, and that he represented them to be accurate and reasonably based on financial statements and historical revenue information of Alena. Plaintiffs allege that these revenue projections were material to Plaintiffs' decision to invest in Alena Internet Corporation ("AIC"), the company that ultimately acquired Alena. Plaintiffs allege that they would not have invested in AIC and ultimately in the acquisition of AIC without reviewing and relying upon the projections provided by Whitman. Plaintiffs allege that they learned that the revenue projections were false or not reasonably based on Alena's financial statements and historical revenue information around the time of the closing. However, Plaintiffs assert that, given the date Plaintiffs learned this information, they would have lost a $500,000 non-refundable deposit previously paid to Fox.

Based on these allegations, Plaintiffs assert six causes of action. The first cause of action, "fraud," is a claim that Whitman fraudulently induced Plaintiffs, who relied upon his material misrepresentations in causing Clearview to execute the letter agreement. The second cause of action, "negligent misrepresentation in execution of the agreement," is a claim that Whitman negligently misrepresented material facts, upon which Plaintiffs relied in executing the letter agreement. The third cause of action, "fraud," alleges that Whitman knew or subsequently learned that the revenue projections were false, but continued

to represent to Plaintiffs that they were accurate. Plaintiffs allege that they relied on these projections in deciding to invest in AIC and ultimately to acquire AIC. The fourth cause of action, "negligent misrepresentation in the sale of Alena, LLC," Plaintiffs allege that Whitman made negligent misrepresentations in his revenue projections, and Plaintiffs relied on these misrepresentations in deciding to invest in AIC. Count five, "statutory fraud," alleges that Whitman made false representations in a transaction involving the acquisition of equity, and that Plaintiffs relied on these misrepresentations in entering the letter agreement. Count six, also entitled "statutory fraud," alleges that Whitman made false revenue projections in a transaction involving the acquisition of equity and Plaintiffs relied on these misrepresentations in deciding to invest in AIC.

Thus, Plaintiffs' claims in this lawsuit can be grouped into two categories: fraud and misrepresentation related to the February 2007 letter agreement, and fraud and misrepresentation related to the revenue projections in relation to investment in AIC and the acquisition of Alena.

The Court concludes that the first category – fraud and misrepresentation claims related to the February 2007 letter agreement – are easily categorized as compulsory counterclaims to Whitman's claim in the California litigation that Linton and Clearview breached the letter agreement because there is a logical relationship between the claim and counterclaim. One of the elements of a breach-of-contract claim is the existence of a valid contract. Accordingly, claims that a party was fraudulently induced or relied on negligent misrepresentations in entering an agreement, claims that undermine the validity of the contract and are in essence in defense of the breach claim, are logically related to a claim that the party breached the agreement. *See, e.g.*, *Nat'l Equip. Rental v. Fowler*, 287

F.2d 43, 46 (2d Cir. 1961) (fraudulent inducement was compulsory counterclaim to breach-of-contract claim such that, whether pleaded or not, adjudication of breach-of-contract claim would be final adjudication of fraud claim). *Cf. George v. Beneficial Finance Co.*, 81 F.R.D. 4, 6 (N.D. Tex. 1977) (noting that suits on notes will inevitably deal with the circumstance of the execution of the notes and any representation made to 'induce' the borrowing), *cited with approval in Plant v. Blazer Financial Servs.*, 598 F.2d 1357, 1363 (5th Cir. 1979)).[12]

The second category of claims – fraud and misrepresentation claims related to the revenue projections and Plaintiffs' decision to invest in and acquire AIC – is a bit more difficult to classify, but the Court concludes that these two were compulsory counterclaims to the breach claim. Whitman argues that Plaintiffs' claims arise out of two transactions – (1) the purchase of Alena and (2) the letter agreement – and the California lawsuit also involved both transactions. The California litigation's main focus was on whether Alena was purchased by a "directly controlled affiliate" of Clearview such that Whitman was owed the 3% transaction fee under the letter agreement, while the current claims involve the reliability of the "evaluation material" Whitman provided to Clearview pursuant to the letter agreement, information that Clearview used in deciding whether to invest in AIC. Though legally distinct, both claims arise out of the letter agreement and the following purchase of Alena. Further, there is a logical relationship between a claim for payment under a contract and a claim

---

[12] Had Whitman prevailed on his breach-of-contract claim, resulting in a judgment that Linton and/or Clearview breached the letter agreement, such a judgment would necessarily extinguish any claim that Linton and/or Clearview were fraudulently induced or relied on misrepresentations in entering the agreement because those are defenses to the breach. The fact that Linton and Clearview prevailed on the breach-of-contract claim cannot change the fact that their claims were compulsory counterclaims, as the determination does not turn on the outcome of the first case but rather on the relationship between the claims.

14

concerning the party's performance under the contract. *See, e.g.*, *Geisinger Med. Ctr. v. Gough*, 160 F.R.D. 467, 469 (M.D. Pa. 1994) ("[T]he defendants' medical malpractice claim is a compulsory counterclaim to the plaintiff's claim for unpaid medical bills. In pursuit of that counterclaim, the defendants will be attempting to prove that the care Andrew Gough received failed to meet a reasonable standard of care; in essence, attempting to prove that the plaintiff failed to perform its contractual obligations, a well established defense to an action for breach of contract...."); 6 FED. PRAC. & PRO. § 1410 ("When the same contract serves as the basis for both the claims and the counterclaims, the logical relationship standard also has been satisfied."). Thus, when Whitman sued Linton and Clearview for breach, arguing that he was owed 3% in accordance with the letter agreement under which he provided them with the "evaluation material," any claim challenging the quality of the evaluation material would have been a compulsory counterclaim. Accordingly, Linton and Clearview's fraud and misrepresentation claims arise out of the same transaction or occurrence that was the subject matter of Whitman's breach-of-contract claim, and therefore should have been asserted as compulsory counterclaims.

Plaintiffs recognize that if a party fails to bring compulsory counterclaims in the original action, it is barred from asserting them in a later suit. However, rather than arguing that their current claims were not compulsory counterclaims under Rule 13(a), they rely on the exception that a counterclaim acquired by a defendant after he has answered is not compulsory, even if it arises out of the same transaction as the plaintiff's claim. *See Dillard v. Sec. Pac. Brokers, Inc.*, 835 F.3d 607, 609 (5th Cir. 1988); FED. R. CIV. P. 13(e). Linton and Clearview argue that they did not discover that they had sufficient grounds to bring the instant claims until February 19, 2008, after they had filed

15

their respective answers. Therefore, Plaintiffs argue, they had to seek leave from the California District Court to amend their answers in order to assert their counterclaims, which leave they sought but were denied.

The Court finds that the counterclaims do not fall under Rule 13(e). Plaintiffs' claims existed at the time they answered the California lawsuit, even though they may not have been aware of all of the facts to support those claims, and thus these claims do not fall within the exception. Moreover, with regard to the claims related to the revenue projections, Plaintiffs' own pleadings state that they discovered that the evaluation material was unreliable at or near the time of closing, before they filed their answer in the California litigation.

The Court therefore concludes that Plaintiffs' claims in the current litigation were compulsory counterclaims to the claims brought in the previous California lawsuit, since they arose out of the transaction or occurrence that was the subject of the California lawsuit, and their adjudication did not require the presence of another party over whom the court could not acquire jurisdiction.

**B. The prior action was concluded by a final judgment on the merits**

Whitman asserts that the prior California action was concluded by a final judgment on the merits, and that Plaintiffs are barred from attempting to assert their claims in this action. Plaintiffs, on the other hand, contend that the third element of res judicata is not satisfied because their current fraud and misrepresentation claims were not adjudicated on the merits in the California lawsuit. Plaintiffs argue that the only claim concluded to a final judgment on the merits in the California suit was Whitman's breach-of-contract claim. Plaintiffs further assert that they were denied the opportunity to assert these claims by the California court without a stated basis for the denial, and that "reasonable doubt exists as to what was decided in denying Plaintiffs the ability

to bring their claims in the first action." Plaintiffs further contend that the California court's denial of leave to amend was procedural and not a determination on the merits of the counterclaims.

Res judicata and the compulsory counterclaim rule bars parties from pursuing claims arising out of the same transaction that were or *could have been brought* in the prior lawsuit. Plaintiffs's arguments fail to appreciate the bigger picture. The California litigation was decided by a final judgment on the merits, and that judgment is preclusive as to all claims arising out of the same transaction that were or could have been asserted in the California litigation. The fact that Linton and Clearview were denied leave to pursue the counterclaims does not preclude application of the bar. The Fifth Circuit has held that claims that were the subject of an untimely motion to amend filed in the first action, which was denied, could have been brought in the first action, and thus res judicata barred the assertion of those claims in a second action. *Nilson v. City of Moss Point, Miss.*, 701 F.2d 556, 560 (5th Cir. 1983). Further, in *Murphy Exploration & Production Co. v. Davis*, 41 F.3d 663 (5th Cir. 1994), the Fifth Circuit held that when leave to assert a counterclaim was denied on the grounds of untimeliness, claim preclusion barred assertion of the claim in a later proceeding. *See also Automated Solutions Corp. v. Paragon Data Sys. Inc.*, 2008 WL 2404972 (N.D. Ohio 2008) ("That Paragon was denied leave to file a counterclaim in the state court case has no effect on whether this Court should apply res judicata to those claims that Paragon could have brought as counterclaims. Paragon had an opportunity in the state court action to raise counterclaims related to its rights under the Agreement and failed timely to avail itself of its opportunity. Any claim that Paragon could have raised will be barred by res judicata if the claim would have been barred had Paragon actually

17

raised it in the state court."). Thus, regardless of whether the denial of leave to amend is based on purely procedural grounds as opposed to a merits-based determination, res judicata may still apply.

Plaintiffs essentially argue that their motion for leave to amend to assert the counterclaim in the California litigation was timely. However, even if the California court abused its discretion in denying leave to amend, the proper remedy was for Linton and Clearview to appeal that decision, not to file a separate lawsuit here in Texas. *See Proctor & Gamble Co. v. Amway Corp.*, 376 F.3d 496, 500 (5th Cir. 2004). As explained in a leading treatise:

> An order that denies leave to amend the pleadings to advance an additional part of a claim partially asserted might seem to fall within the principle that a plaintiff should be free to bring a second action on a theory that could not be advanced in the first action. It appears well-settled, however, that claim preclusion bars a second action on the part excluded from the first action. This result is sound. The abstract theory that amendment should be freely allowed is widely honored in practice. There is likely to be good reason when the court that has control of the first action concludes that a party should not be allowed to advance matters so closely related to the action as to be part of a single claim. Unless the court can be persuaded to direct that denial of leave to amend is without prejudice to advancing the new matter in a separate action, preclusion should apply. Any error should be corrected by appeal in the first proceeding.

18 FED. PRAC. & PRO. § 4412; *see also Sensormatic Sec. Corp. v. Sensormatic Electronics Corp.*, 329 F. Supp. 2d 574 (D. Md. 2004) ("Very often, the doctrine of claim splitting applies to bar a plaintiff from filing a new lawsuit after the court in an earlier action denied leave to amend the complaint to add those claims.").

Defendant Whitman has met his burden of proving that no genuine issue of material fact exists as to this third element of his res judicata defense.

## C. Public Policy

Plaintiff asserts that "neither res judicata nor collateral estoppel is rigidly applied. Both defenses must be qualified or rejected when their use would contravene an overriding public policy or result in manifest injustice."[13] Here, Linton and Clearview claim that if the Court grants summary judgment for Defendant, manifest injustice would result in denying Plaintiffs their day in court.

However, Linton and Clearview could have appealed the California court's decision denying them the opportunity to amend. Their failure to do so does not translate into unjust denial of an opportunity to have their claims heard in court. As noted by Whitman, "[n]owhere in Plaintiff's Response is there any explanation as to why Plaintiffs did not challenge the Court's order in any way, but instead filed the same claims in another court in another state." The record also shows that Plaintiffs voluntarily agreed to binding arbitration before preserving their rights with regard to the Court's prior denial of their motion for leave to amend. Plaintiffs should have asked the California court to reconsider the denial of their claims or to note that the denial was without prejudice to asserting the claims in another suit, or they should have appealed. Considering these voluntary actions and inactions by the Plaintiffs, it would not be manifestly unjust for this court to apply res judicata and the compulsory counterclaim bar. Furthermore, public policy interests would not support allowing a party to dispute a federal court order by filing the same claim in a separate lawsuit in another state.

## CONCLUSION

Based on the foregoing, this court GRANTS Defendant Richard Whitman's

---

[13] Docket # 22 at p. 13; *Garner v. Giarrusso*, 571, F.2d 1330, 1336 (5th Cir. 1978).

Motion for Summary Judgment (docket no. 20) with regard to all of Plaintiffs' claims. Defendant shall file a bill of costs within ten days of entry of judgment. This Order disposes of all pending claims and issues, and the Clerk's office is directed to enter judgment accordingly and to close this case.

It is so ORDERED.

SIGNED this 9th day of July, 2009.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE